IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, | No. 3:13-cv-01461-HZ<br><br>OPINION & ORDER |
| Plaintiff, | |
| v. | |
| JOEL BOGGS, as the personal representative of the ESTATE OF JORDAN BOGGS; JOEL BOGGS, individually; and LORITA BOGGS, aka RITA BOGGS, individually, | |
| Defendants. | |

JOEL BOGGS as the personal representative of the ESTATE OF JORDAN BOGGS; JOEL BOGGS, individually; and LORITA BOGGS, aka RITA BOGGS, individually

Counter Plaintiffs,

v.

/ / /

1 - OPINION & ORDER

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
Corporation, SUSAN M. SCHIBEL
INSURANCE AGENCY INCORPORATED,
an Oregon Corporation,

                        Counter Defendants.

Robert L Winkler
Parks Bauer Sime & Winkler, LLP
570 Liberty Street SE, Suite 200
Salem, OR 97301

      Attorney for Plaintiff & Counter Defendants

David B. Gray
Swensen & Gray
5911 SE 43rd Avenue
Portland, OR 97206

      Attorney for Defendants & Counter Plaintiffs

HERNÁNDEZ, District Judge:

      Plaintiff State Farm Mutual Automobile Insurance Company brought this declaratory action against Defendants Joel Boggs, acting as representative of the estate of his son, Jordan Boggs; Joel Boggs in his individual capacity; and his wife Lorita Boggs in her individual capacity. State Farm requests a declaratory judgment that it does not owe uninsured motorist (UIM) benefits to the estate of Jordan Boggs. Defendants pled the following counterclaims against State Farm and the Susan M. Schibel Insurance Agency: (1) breach of contract against State Farm for failure to pay UIM benefits, (2) negligence against the Schibel Agency for failure to provide adequate advice and service, and (3) vicarious liability against State Farm for the Schibel Agency's negligence. State Farm filed a motion for summary judgment on all claims and counterclaims. For the reasons explained below, State Farm's motion for summary judgment [22] is granted.

2 - OPINION & ORDER

BACKGROUND

On April 7, 2012, Jordan Boggs was killed in a traffic accident near Fairbanks, Alaska. Compl. ¶ 8. Jordan was a passenger in the car during the accident, and the vehicle did not belong to him or his family. Winkler Decl. Ex. 2, at 5.

Jordan's parents, Joel and Lorita Boggs, owned a home in Oregon and until 2009 owned property in North Pole, Alaska (the Lolly Place property). Id. at 4; Supp. Winkler Decl. Ex 1, at 3; Gray Decl. Ex. 2, at 1. Prior to the 2012 accident, Joel would travel to Alaska to work as a painting, drywall, and wall covering contractor. Boggs Decl. ¶ 6. Throughout the year, Joel would typically work on a "two week[s] on, two week[s] off" schedule. Winkler Decl. Ex. 2, at 3. He worked in Alaska and then returned home to Oregon between jobs. Id. Joel also spent entire summers working with his three school-aged sons in Alaska, returning to Oregon in time for the school year. Id. & Ex. 1, at 36. While in Alaska, Joel would sleep in a trailer[1] rented by Fineline Painting LLC, his business. Id. Ex. 2, at 3, 17. The trailer had no running water or plumbing. Id. at 3. Up until the car accident in 2012, Joel maintained an Oregon driver's license, filed Oregon tax returns, and lived in a home in Dundee, Oregon. Id. at 6, 8–9.

Although he had been spending summers in Alaska, by 2008, Jordan moved there: he relinquished his Oregon driver's license, obtained an Alaska driver's license, registered to vote in Alaska, received dividends from the Alaska Permanent Fund as a resident of Alaska, and began earning all of his income in Alaska. Id. at 9–11, 19, 31–32, 46. Jordan started to work independently from his father Joel's business and by 2011 he primarily worked for Tilmo Painting, a company based in North Pole, Alaska. Id. at 13–15. Jordan was financially independent from his parents, earning $80,000–$90,000 in 2011. Id. at 13, 30. In 2010, after

---

[1] Although the record reflects that Joel and Lorita Boggs owned the Lolly Place property until 2009, it is unclear whether Joel or Jordan ever stayed there.

living in a rental for a year, Jordan purchased a house in North Pole, Alaska, representing on his loan application that he intended the house to be his primary residence. Id. at 46; Ex. 3, at 1. After purchasing his house, Jordan would occasionally stay at his father's trailer and return to the family home in Oregon. Winkler Decl. Ex. 1, at 29; Boggs Decl. ¶ 8.

Joel Boggs owned ten vehicles for business and personal use. Winkler Decl. Ex. 1, at 34. Six of these vehicles were registered in Oregon and four were registered in Alaska. Id.; Boggs Decl. ¶ 9. Joel kept several of the vehicles at his son Jordan's house in Alaska. Boggs Decl. ¶ 7. Joel purchased and managed the insurance policies for all the vehicles. Winkler Decl. Ex. 1, at 26. He purchased State Farm automobile insurance policies through the Schibel Agency for at least six vehicles, including some that were registered and located in Alaska. Compl. Exs. 1–6; Boggs Decl. ¶ 7.

The Schibel Agency sells State Farm policies exclusively and is licensed to sell policies only in Oregon and Washington. Schibel Decl. ¶¶ 2–3; Gray Decl. Ex. 1, at 6–7. In 2008, Joel purchased an insurance policy for a 1998 GMC Sonoma pickup, which was located in Alaska, from a State Farm insurance agency in Alaska. Schibel Decl. ¶ 9. In 2009, Jordan was removed from the auto insurance policies. Id. ¶ 10.

After the car accident that resulted in Jordan's death, Joel, as representative of Jordan's estate, claimed UIM benefits with State Farm. Compl. ¶ 9. At the time of his death, Jordan was not an insured on any of the policies that Joel had purchased from the Schibel Agency. Supp. Schibel Decl. ¶ 5. The policies, however, provide that a "resident relative" of an insured is

/ / /

/ / /

/ / /

4 - OPINION & ORDER

covered under the UIM benefits provision. Compl. Ex. 7, at 17. As relevant here, "resident relative" is defined[2] as:

> a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is . . .
>
>> a relative of that named insured or his or her *spouse* by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with the named insured . . . .

Id. at 4–5.

State Farm filed this action, requesting a declaratory judgment that Defendants are not entitled to UIM benefits for Jordan's death under any of Defendants' insurance policies. Defendants filed three counterclaims, alleging that (1) Jordan was covered either under the UIM provision of the insurance policies purchased from the Schibel Agency (Oregon Policies) or under a State Farm insurance policy purchased in Alaska (Alaska Policy); (2) the Schibel Agency provided negligent advice and failed to provide proper insurance coverage to Joel, which resulted in Jordan not being covered under any of Joel's insurance policies; and (3) State Farm is vicariously liable for the Schibel Agency's negligence. Defendants request relief in the form of insurance proceeds that they assert Jordan's estate is entitled to collect under either the Oregon or Alaska Policies, or under policies that Joel would have purchased if the Schibel Agency had not provided negligent advice.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and

---

[2] Although Defendants had purchased various policies from State Farm, the definition of "resident relative" is the same for all the policies because the same policy form was used. See Compl. Exs. 1–7.

5 - OPINION & ORDER

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

I.   Uninsured Motorist Benefits

In its sole claim, State Farm argues Jordan's estate is not entitled to UIM benefits because Jordan was not insured as a "resident relative" on the Oregon Policies. State Farm asserts that Jordan did not reside primarily with his parents in Oregon and was no longer dependent on his parents financially. Defendants' first counterclaim claims the opposite—that Jordan was a

6 - OPINION & ORDER

covered insured as a member of his parents' household. Therefore, the issue of whether Jordan's estate is entitled to UIM benefits depends on whether he was a "resident relative" of his parents' household.

"[T]he question of whether a person is a resident of a household is a question of fact." State Farm Mut. Auto. Ins. Co. v. McCormick, 17 P.3d 1083, 1085 (Or. Ct. App. 2000). However, the question becomes a matter of law "when the evidence does not disclose a factual situation from which it can be said that differing inferences can be drawn." Id. (internal quotation marks omitted). Thus, summary judgment is appropriate if "only one inference can be drawn." Id. The following factors are considered to determine whether a person is a member of a household: "(1) whether the parties live under one roof; (2) the length of time they have lived together; (3) whether the residence is intended to be permanent or temporary; and (4) whether the parties are financially interdependent." Id.

The following facts are undisputed:

- In 2010, Jordan purchased a home in Alaska to be his primary residence. For the previous year, Jordan had been living in a rental in Alaska.
- Joel, Jordan's father, did not live at Jordan's primary residence.
- Prior to the 2012 accident, Joel was a resident of Oregon who worked in Alaska part-time.
- Jordan occasionally stayed at his father's trailer in Alaska.
- Prior to the 2012 accident, Jordan established Alaskan residency by registering to vote, obtaining a driver's license, purchasing a home, and applying for dividends from the Alaska Permanent Fund.
- Jordan was financially independent from his parents.

Based on these facts and the factors stated above, the court finds that Jordan was not a member of his parents' household in Oregon. Jordan did not live with his parents in Oregon, and had not been living there since at least 2009. Jordan's establishment of Alaskan residency shows that he intended to make Alaska his permanent residence, and not his parents' household in Oregon. Finally, Jordan was financially independent from his parents.

7 - OPINION & ORDER

Defendants argue the 2008 Alaska Policy for the 1998 GMC Sonoma changes the analysis in two distinct ways. Defendants first argue that the Alaska Policy combined with the Oregon Policies establish that Joel Boggs maintained residences in both Oregon and Alaska, and that as a result, the case law regarding residency does not apply here. Defendants neither explain why the case law does not apply nor cite to case law that does apply.

Defendants further argue that Jordan was covered under the Alaska Policy as a "relative." Defendants provided an excerpt of a 2014 Alaska policy for another vehicle that states relatives of insureds are covered by the policy and argue that Jordan qualifies as a relative. Supp. Winkler Decl. Ex. 2, at 1; Gray Decl. Ex. 4, at 3. Even assuming the 2008 Alaska Policy was identical to the one Defendants cite, the policy's definition of "relative" requires that the person "reside[] primarily with [the insured]." Supp. Winkler Decl. Ex. 2, at 5. This definition is substantially the same as the definition of "resident relative;" both require that the relative primarily reside with the insured. Thus even if Joel resided in Alaska, the court would nonetheless find that Jordan was not a resident of Joel's household. By 2010 Jordan only occasionally stayed at Joel's trailer and Joel and Lorita Boggs no longer owned the Lolly Place property, which is the residence listed on the Alaska Policy. Furthermore, there is no evidence in the record that Joel or Jordan intended either the trailer or the Lolly Place property to be a permanent residence, and by 2011 Jordan was entirely financially independent from his parents. Wherever Joel ultimately resided, the only inference that may be drawn from the record is that Jordan and Joel did not share that residence. Therefore the Alaska Policy has no effect on the court's analysis.

Finally, Defendants argue that summary judgment should not be granted because there are genuine issues of material fact. Def.'s Resp. 7. In particular, Defendants argue there is a dispute as to whether Joel requested that Jordan be removed from the Defendants' auto insurance

8 - OPINION & ORDER

policies. Susan Schibel of the Schibel Agency declared that Joel directed the agency to remove Jordan from the policies. Schibel Decl. ¶ 10. In response, Joel declared that "I always intended that Jordan be covered by my automobile insurance coverage and I thought that was the coverage that I was paying for." Boggs Decl. ¶ 2. Although Joel may have intended for his son to be covered, and although Jordan had previously been insured under his auto policies, there is no dispute that Jordan was removed from the policies by 2009.

Because Jordan Boggs was not an insured or a covered resident relative under Defendants' policies, Plaintiff's motion is granted for the claim and counterclaim regarding UIM benefits.

II.     Negligence by the Schibel Agency

In their second counterclaim, Defendants/Counter Plaintiffs argue that the Schibel Agency was negligent for providing inadequate and erroneous advice and insurance coverage to Joel and his family. Counter Plaintiffs assert that the Schibel Agency and its employees failed to advise Joel that he was required to purchase Alaska insurance coverage for automobiles located in Alaska. Counter Plaintiffs also contend the Schibel Agency was negligent for selling insurance for vehicles that were located in Alaska, and for failing to advise Joel that Jordan would not be considered a member of his household, for insurance purposes, on automobiles garaged and registered in Alaska. State Farm counters that Counter Plaintiffs' negligence claim against the Schibel Agency is barred by Oregon law.

Under Oregon law, the economic loss doctrine "bars a party that has suffered a purely economic loss from bringing a negligence action against the party that caused the loss, unless there is a special relationship between the parties." Harris v. Suniga, 180 P.3d 12, 14 (Or. 2008). Economic losses are defined as "financial losses such as indebtedness incurred and return of monies paid, as distinguished from damages for injury to person or property." Onita Pac. Corp.

9 - OPINION & ORDER

v. Trustees of Bronson, 843 P.2d 890, 896 n.6 (Or. 1992).  Lost insurance proceeds are economic losses.  Benson Tower Condo. Owners Ass'n v. Victaulic Co., No. 3:13-cv-01010-SI, 2014 WL 5285475, at *3 (D. Or. Oct. 15, 2014) (citing Harris v. Suniga, 149 P.3d 224, 228 (Or. App. 2006), aff'd 180 P.3d 12 (Or. 2008)).  An agent–principal relationship is a special relationship for purposes of the economic loss doctrine.  Miller v. Mill Creek Homes, Inc., 97 P.3d 687, 689 (Or. App. 2004)

      A captive insurance agent sells insurance exclusively for one company.  Miller, 97 P.3d at 689 n.1.  Although an independent insurance agent is typically "viewed as an agent of the insured and owes a duty of reasonable care to the principal insured[,]" a captive insurance agent ordinarily is not an agent of the insured and therefore owes no special duty of care to the customers to whom she sells insurance.  Lewis-Williamson v. Grange Mut. Ins. Co., 39 P.3d 947, 950 (Or. App. 2002).  A captive insurance agent generally is an agent only of the company whose policies she sells.  Miller, 97 P.3d at 315–16.

      Therefore, a plaintiff cannot prevail on a negligence claim against a captive insurance agent if the only damages requested are economic losses.  There is an exception to this rule.  If the insured, the captive agent, and the insurer all agree that the captive agent represents the interests of the insured, then a dual agency relationship is formed where the captive agent is effectively an agent of both the insured and the insurer.  Id. at 315.  The fact that an insured trusted a captive agent "to take care of her insurance needs" is not sufficient to give rise to an agency relationship.  Lewis-Williamson, 39 P.3d at 950.  The reasoning behind this rule is to avoid creating "conflicting duties owed to both the [insurance company] and the [insured]."  Miller, 97 P.3d 316.

/ / /

Here, Counter Plaintiffs' only claim against the Schibel Agency is for lost insurance proceeds that they assert they would have received but for the Schibel Agency's negligence. This is a claim for economic losses. State Farm argues that the Schibel Agency is a "captive agent" of State Farm, and therefore the Schibel Agency owed no special duty of care to Joel and thus, Counter Plaintiffs' second counterclaim against the Schibel Agency is barred.

The Schibel Agency sells exclusively State Farm insurance products and is therefore a captive insurance agent. There is no contrary evidence in the record. As a result, unless Counter Plaintiffs can establish that a special relationship existed between Joel and Lorita Boggs and the Schibel Agency, Counter Plaintiffs' claim fails as a matter of law. In his deposition, Joel stated that he relied on the Schibel Agency for advice on his insurance needs. Winkler Decl. Ex. 1 at 20; Boggs Decl. ¶ 3. However, Joel's trust in the Schibel Agency and its employees to "take care of [his] insurance needs" is insufficient to show the existence of an agency relationship between Joel and Lorita Boggs and the Schibel Agency. See Lewis-Williamson, 39 P.3d at 950. Instead, Counter Plaintiffs must show that the Boggses, the Schibel Agency, and State Farm all understood that the Schibel Agency represented the interest of the Boggses. There is no evidence in the record that either the Schibel Agency or State Farm believed that there was an agency relationship between the Boggses and the Schibel Agency. Counter Plaintiffs' second counterclaim against the Schibel Agency is barred by the economic loss doctrine, and State Farm is entitled to summary judgment.[3]

/ / /

---

[3] In their response to State Farm's motion, Defendants attempt to broaden their claim to include alleged negligence by State Farm, rather than the Schibel Agency. Def.'s Resp. 7–8. However, Defendants' counterclaim alleges only that the Schibel Agency was negligent, not that State Farm was negligent. Answer ¶¶ 9–19. Any argument that State Farm was negligent is beyond the scope of Defendants' second counterclaim.

11 - OPINION & ORDER

III.     Vicarious Liability

Counter Plaintiffs' third counterclaim alleges Counter Defendant State Farm is vicariously liable for the Schibel Agency's negligence.  Counter Plaintiffs argue the Schibel Agency had a duty to advise them that their automobiles registered, garaged, and located in Alaska were required to be insured by Alaska policies, which the Schibel Agency could not issue.  Counter Plaintiffs further assert that the Schibel Agency was negligent by (1) failing to advise Joel that he was required to purchase Alaska insurance coverage for automobiles located in Alaska; (2) selling insurance for vehicles that were located in Alaska, which it was not qualified to do; and (3) failing to advise Joel that Jordan would not be considered a member of his household, for insurance purposes, for automobiles garaged and registered in Alaska.  Because the Schibel Agency acted as State Farm's agent, Counter Plaintiffs argue State Farm is vicariously liable for the Schibel Agency's negligence.  Counter Defendant argues even if State Farm, through the Schibel Agency, had advised, sold insurance to, and failed to disclose information to Joel as alleged, "the outcome would be no different."  Reply 6.

To prove negligence in Oregon, a plaintiff must establish facts showing:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

Solberg v. Johnson, 760 P.2d 867, 870 (Or. 1988) (citing Fazzolari v. Portland Sch. Dist. No. 1J, 734 P.2d 1326 (Or. 1987) and Stewart v. Jefferson Plywood Co., 469 P.2d 783, 784–85 (Or. 1970)).  To establish that the conduct was a cause of plaintiff's harm, a plaintiff must show that plaintiff's harm would not have occurred but for that conduct.  See Joshi v. Providence Health

12 - OPINION & ORDER

Sys. of Or. Corp., 342 Or. 152, 162, 149 P.3d 1169 (2006) (but-for standard applies in majority of negligence cases).

Here, Counter Plaintiffs cannot establish the Schibel Agency was negligent and therefore their vicariously liability counterclaim against Counter Defendant fails.  As Counter Defendant notes, even if the Schibel Agency had advised Counter Plaintiffs of their need to procure Alaska insurance policies and even if Counter Plaintiffs had procured Alaska insurance policies for their automobiles located in Alaska, those Alaska policies still require that Jordan be a resident of Joel and Lorita's household in order to be covered as a resident relative under the policy.  As discussed in detail above, the court finds that Jordan was not a resident of Joel and Lorita's household.  Thus Jordan would not have been covered under an Alaska policy that Joel might have purchased if the Schibel Agency had not provided negligent advice.  As a result, Counter Plaintiffs cannot establish that their harm would not have occurred but for Counter Defendant's allegedly negligent conduct.  Accordingly, State Farm is entitled to summary judgment on Counter Plaintiffs' third counterclaim.

CONCLUSION

For the foregoing reasons, State Farm's Motion for Summary Judgment [22] is granted.

IT IS SO ORDERED.

Dated this _____ day of ____February____, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge

13 - OPINION & ORDER